1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

VERNELL HAYES,

                    Plaintiff,

          v.

IKEA DISTRIBUTION[1],

                    Defendant.

CASE NO. C12-5370 BHS

ORDER GRANTING MOTION
TO DISMISS

          This matter comes before the Court on a motion to dismiss filed by Defendant

IKEA (Dkt. 13). The Court has considered the pleadings filed in support of and in

opposition to the motion and the remainder of the file and hereby grants the motion for

the reasons stated herein.

**I. PROCEDURAL HISTORY**

          On April 26, 2012, pro se Plaintiff Vernell Hayes ("Hayes") filed a 100-page

complaint, a voluminous set of documents containing many allegations, not all of which

are readily understandable, against his former employer IKEA.  Dkt. 4.  On October 25,

2012, IKEA filed the instant 12(b)(6) motion to dismiss.  Dkt. 13.  On November 14,

          [1] Although Hayes has named IKEA Distribution as the Defendant, Defendant has
clarified that its corporate name is actually IKEA Distribution Services, Inc. ("IKEA"). Dkt. 12
at 1-2.

ORDER - 1

1   Hayes filed a responsive brief.  Dkt. 15.  On October 16, 2012, IKEA filed a reply brief.

2   Dkt. 16.  On November 20, 2012, Hayes filed a "supplement," containing additional

3   allegations against IKEA and asking the Court to deny IKEA's motion to dismiss.  Dkt.

4   17.  On November 30, 2012, IKEA filed a reply to Hayes's supplement.  Dkt. 18.

5                          **II. FACTUAL ALLEGATIONS**

6          Hayes 100-page complaint includes a Settlement Agreement between IKEA and

7   Hayes, handwritten notes by Hayes, and portions of e-mail communications and various

8   other internal IKEA documents.  *See* Dkts. 4, 4-1, 4-2 and 4-3.  To the best of the Court's

9   understanding, Hayes's complaint boils down to two sets of claims: (1) alleged race

10  discrimination, harassment and retaliation while he was employed with IKEA; and (2)

11  alleged breach of the Settlement Agreement he entered with IKEA.  *See* Dkt. 4 at 2-3.

12  Hayes seeks lost wages and emotional distress damages as remedies.  *See id.* at 4.

13         Upon review of Hayes's complaint and IKEA's motion, which attempts to

14  organize the allegations in Hayes's complaint and put them in a more understandable

15  form, the Court finds IKEA's formulation of the factual allegations accurate (complete

16  with citations to the record) and it hereby adopts them as follows:

17             **A.      Plaintiff's Employment with IKEA**
                  Plaintiff began working for IKEA as a General Warehouse Worker
18      in January 2008. Complaint (Dkt. 4-1) at 15. He remained employed with
        IKEA until April 30, 2010. *See* Complaint (Dkt. 4) at 6, 22.
19             **B.   Plaintiff's Allegations of Harassment and Discrimination
        During IKEA Employment**
20                 Plaintiff is African-American.  Complaint (Dkt. 4-1) at 9. He makes
        various allegations of race-based disparate treatment and harassment
21      beginning in 2008. *See* Complaint (Dkt. 4) at 2-2. Some of these allegations
        were mentioned in Plaintiffs formal "Statement of Claim," *see id.* at 2-3,
22      while others appear in various documents Plaintiff submitted in an apparent

effort to support  his Complaint. The events reflected in Plaintiffs Complaint may be summarized as follows:

• July  25, 2008 - Plaintiff received a written warning for addressing a co-worker in a disrespectful manner, including admittedly cursing. Complaint (Dkt. 4-1) at 17-18.

• September 27, 2008- Plaintiff alleges that in 2008, IKEA "tried to fire me because my old supervisor Romeo Garcia said I smelled like alcohol." Complaint (Dkt. 4) at 2. Plaintiff, whose shift started at 7:00a.m., states he told Mr. Garcia that he had gone out the night before and taken his last drink at around midnight. Complaint (Dkt. 4-3) at 3-4.  By letter dated September 29, 2008, IKEA notified Plaintiff that on September 27, he tested positive for having alcohol in his system while at work, in violation of  the  IKEA Drug and Alcohol Free Workplace policy.  Complaint (Dkt. 4-2) at 5.  IKEA therefore terminated its employment relationship with Plaintiff effective September 27, 2008.  *Id.* at 5-6.  However, Plaintiff challenged  his termination and IKEA later rescinded it.  Complaint (Dkt. 4-3) at 5.

• April 30, 2009 - Plaintiff injured himself when hydraulic fluid sprayed into his left eye while using a forklift. Complaint (Dkt. 4-1) at 4, 12-14, 21-25. After Mr. Garcia approached Plaintiff about completing an incident report, Plaintiff says he "began to get irritated and shout[ed] 'My eyes [sic] messed up and yall [sic] worried about paperwork!" Id. at 14.

• August 14, 2009  - Plaintiff  requested  but  was  denied  more than one week of paternity leave.  *Id*. at 9.  He alleged he was treated differently than similarly-situated Caucasian co-workers. *Id*.; *see also* Complaint (Dkt. 4-3) at 20-21.

• August  20, 2009 - IKEA gave Plaintiff  "a final written warning for [Plaintiffs] alleged inappropriate personal conduct, which [Plaintiff] believe[d] was unwarranted and too severe."  Complaint (Dkt. 4-1) at 9. On September  8, 2009, a five-member "Peer Review" committee affirmed  the August 20 corrective action that Plaintiff received for insubordination.  *Id.* at 16.5  Plaintiff complained about the outcome of and process used for his Peer Review complaint. *Id*.; *see also id*. at 7. Plaintiff stated: "Don't exactly know what types of facts were presented nore [sic] if the witness was relevant.  I feel to have a relevant peer group it should come from outside like from the store to have peers come from there so there aint [sic] inside influence." *Id*. at 16.  By email dated September 27, 2009, Plaintiff requested that the disciplinary action be removed from his personnel file. Complaint (Dkt. 4-2) at 2. Plaintiff complained:

Something  should be done by [sic] the way the DC treats  there [sic] employees because I feel like my equal rights in this company is [sic] completely taken from me and thats [sic] a shame because I love the work. I work my butt off for this company and there is no

reason I should be treaded [sic] this way. I will be willing to take a lie detector test to prove my innocents [sic].

*Id*.  Similarly, in an October 24, 2009 email, Plaintiff stated that "I was serious when I said I feel like my equal rights in this company have been completely taken from me and I think its [sic] about time for all of it to be exposed."  Complaint (Dkt. 4-1) at 6.

###    C.    Events Leading to the Settlement Agreement Between Plaintiff and IKEA

####    1.    The March 11, 2010 forklift incident

On March 11, 2010, while Plaintiffs EEOC Charge was pending and before its mediation, Plaintiff and Mr. Garcia had words while Plaintiff was operating a forklift and Mr. Garcia was riding a bicycle. Complaint (Dkt. 4-2) at 14 (summary of investigation findings); see also Complaint (Dkt. 4-1) at 2-3 (Plaintiff's handwritten statement about the incident). Plaintiff was unloading product at the time.  Other witnesses indicated that Plaintiff was upset with Mr. Garcia prior to the incident and that Plaintiff was agitated when the incident occurred. Complaint (Dkt. 4-2) at 14.  For his part, Plaintiff explained in the handwritten statement he gave on March 11, 2010:

> When Romeo came by I told him I been [sic] asking to load for a long time and every time I start getting good they take me off for weeks/months  at a time. I also stated I should have been up to 3 trucks by now if given the proper time. He than say [sic] to me "oh now what [sic] you getting mad?["]  I replied leave me alone and began towards my pallet. He backs his bike up slightly and I barlay [sic] hit the tire with the lift while getting my pallet. He yells what u [sic] doing. I told him tryin[g] to work so get out [of] the way. He lags around about 20 minutes talking to Tim and Jessie. About an hour later Letty calls me to [the] office and asks me to write a report on what happen[ed]. I than [sic] ask her if I was aloud [sic] to use the phone to make a phone call she told me yea [sic].  I called my attorney and explained what happen[ed]. I was advised to write what they wanted. I also stated to Letty I know the policy of an accident at lkea [sic]. If he felt I hit him he should have called Safety and Security like [the] policy states, not intrupt [sic] me from working an hour later. I also called and made a complaint from to [sic] corporate office.

Complaint (Dkt. 4-1) at 2-3.  Plaintiff similarly admitted in an April 7, 2010 e-mail to Lori Schilling of IKEA Coworker Relations that he hit Mr. Garcia.  However, in this e-mail nearly a month after the incident, Plaintiff added a contention that Mr. Garcia backed his bike up into Plaintiff.  *Id*. at 1.  Plaintiff further complained that Mr. Garcia "set up" Plaintiff "to fail"

because Mr. Garcia gave him three transit loads with products "mixed up all over the gate [and] not set up by the load like they were supposed to be ...." *Id.*

### 2.   IKEA's investigation findings about the forklift incident

The IKEA Safety and Security group investigated the March 11, 2010 incident, including interviewing Plaintiff. *See* Complaint (Dkt. 4-2) at 14. Patrick Wedig, the Distribution Center Manager, sent Plaintiff an e-mail summarizing the company's investigation findings and conclusions. Plaintiff was advised that he would be assessed 20 more points against his forklift license under the IKEA Forklift Safety policy for (1) hitting a pedestrian, and (2) reckless driving (swerving, weaving, and improper driving). *Id.* Mr. Wedig stated that IKEA felt it "must impose a serious corrective action that at this point is likely to include termination of employment" given Plaintiff's admissions, his aggressive conduct on March 11, 2010, and the fact that Plaintiff was already on a final warning. *Id.* However, Mr. Wedig advised, because of Plaintiffs' complaints to IKEA Coworker Relations and the EEOC, including the scheduled mediation to address Plaintiff's concerns, IKEA would postpone a final decision about corrective action to give Plaintiff an opportunity to provide any further information he wanted IKEA to consider as well as to give Plaintiff an opportunity to air his concerns in the forthcoming mediation. *Id.*

### 3.   The Settlement Agreement entered by Plaintiff and IKEA

Ultimately, IKEA did not take any corrective action about Plaintiff's conduct during the March 11, 2010 forklift incident because it reached a resolution with Plaintiff during mediation. On April 26, 2010, IKEA and Plaintiff entered into the Settlement Agreement as part of the mediation of Plaintiff's January 2010 Charge. Complaint (Dkt. 4) at 5-10; *see also id.* at 17-20 (post-mediation communications indicating that the Settlement Agreement was the product of the mediation). In the Settlement Agreement, the parties agreed that April 30, 2010 would be Plaintiff's last day of IKEA employment and Plaintiff affirmed that "due to circumstances unique to hi[m], including but not limited to irreconcilable differences" with IKEA, he was not qualified for future IKEA employment and he would not reapply to work for the company. *Id.* at 6, 8.

The Settlement Agreement the parties signed on April 26, 2010 contained some typographical errors, such as occasionally using the wrong gender pronouns for Plaintiff and a couple of references to a different matter. *See id.* at 5-10. Plaintiff thereafter requested modifications. *See id.* at 23. IKEA gave Plaintiff a corrected copy of the Settlement Agreement after Mr. Wedig initialed IKEA's proposed corrections on May 3, 2010. *See id.* at 12-16.

Plaintiff never signed or initialed these corrections. *Id*. at 11. However, Plaintiff did not revoke the "original contract" as paragraph 13 of the Settlement Agreement permitted him to do. *See id*. at 5, 10, 20, 23.[2] IKEA thus paid the agreed consideration to Plaintiff and his former attorney. *See id*. at 3:25 (stating that the "End result" of Plaintiff's EEOC mediation with IKEA was that "they gave me money"). Months later, IKEA declined a request by Plaintiff that he be given three months of medical benefits that were not part of the Settlement Agreement. *See id*. at 19-20, 23; *see also id*. at 5-10.

**D.  Plaintiff Files for Unemployment Benefits**

Plaintiff applied for unemployment benefits with the Washington State Employment Security Department ("ESD") effective May 9, 2010, reporting that he was "fired from IKEA Wholesale, Inc. on 04/30/2010 for 'too many points.'" Complaint (Dkt. 4) at 21-22. ESD reported that an IKEA representative stated Plaintiff "quit for personal reasons on 04/30/2010." *Id*. at 22. ESD further indicated it mailed Plaintiff a follow-up questionnaire that he never returned. *Id*.

On May 25, 2010, ESD denied Plaintiff's application for unemployment benefits stating:

> Based on the available information, it is determined you were the moving party in your separation from IKEA, therefore this decision is being properly adjudicated a voluntary quit. Since you did not respond, good cause for quitting cannot be established.

*Id*. On June 10, 2010, Plaintiff appealed the decision to deny him unemployment benefits. Complaint (Dkt. 4-1) at 19. Plaintiff explained, "I spoke to someone at the unemployment office on June 4, at 8:26 am and was informed that my statement was received on time that I sent the reason I was let go." *Id*. Plaintiff also argued to ESD that:

> I did not quit my job, but was informed that I was going to be fired because too many infraction points from a man who I turned in for harassment last summer.... They also stated I showed

---

[2] The Settlement Agreement gave Hayes two and one-half days to revoke the agreement by providing, or arranging for the EEOC mediator to provide, written notice of revocation to the attorney who represented IKEA during the mediation. *See* Complaint (Dkt. 4) at 10 (13). Neither Hayes nor the EEOC mediator subsequently contended that Hayes revoked the Settlement Agreement. *See* Complaint (Dkt. 4) at 20. To the contrary, Hayes's complaint includes an email from counsel for IKEA expressly stating that Hayes did not revoke. *Id*. at 23. Hayes expresses agreement with this point through his complaint's allegation that IKEA "did not hold up the end of the deal," thus contending that he and IKEA did have an enforceable agreement. *See id*. at 3:25.

aggressive behavior toward a man I turned in for harassment last summer. All this happen[ed] after I turned the company in to the EEOC for discrimination.  I feel I lost my job out of retaliation which I noted in the papers I sent. I also sent a letter I was going to be terminated on a certain date.

*Id.*  Plaintiff's Complaint does not include any information about the outcome of his ESD appeal. However, Plaintiffs application to proceed in forma pauperis states that "unemployment ran out."  Declaration and Application to Proceed in Forma Pauperis and Written Consent for Payment of Costs (Dkt. 1) at 2 (Response to Question 8).

    **E.**       **Plaintiff Alleges IKEA Breached the  Settlement Agreement by Not Paying for Three Months of COBRA and by Providing Information to ESD**

Before appealing to ESD, Plaintiff apparently complained to the EEOC mediator about how IKEA allegedly had responded to ESD's inquiry about him.  Plaintiff reported being denied unemployment benefits because  "I didn't have grounds to quit."  Complaint (Dkt. 4) at 18. Plaintiff also expressed an understanding that IKEA had stated "I quit for personal reasons." Id.  Plaintiff's Complaint does not include any response he received from the EEOC mediator on this subject, nor any indication that the mediator raised this topic with IKEA as a concern.

However, on July 1, 2010, EEOC mediator Arzella ("A.C.") Thompson relayed a message to counsel for IKEA that Plaintiff  was complaining the Settlement Agreement incorrectly omitted three months  of COBRA.  *Id*. at 20.  Ms. Thompson advised that her notes from the mediation suggested IKEA "did state they would give Mr. Hayes 3 mos. of COBRA."  *Id*.  IKEA did not agree with Ms. Thompson's suggestion that Plaintiff was entitled to be paid for three months of COBRA coverage.  In a July 2, 2010 e-mail reply, counsel for IKEA noted that COBRA was not mentioned in the EEOC mediation/settlement agreement, and that the final settlement agreement included an integration clause superseding any prior understandings Plaintiff may have had. *Id*. at 19.  Specifically,  paragraph 12 of the Settlement Agreement confirms that agreement  "sets forth the entire agreement between the parties hereto and fully supersedes any prior agreements or understandings between the parties, except any effective and binding agreements already in place between [Plaintiff][3] and" IKEA. *Id*. at 10.

On August 10, 2010, Plaintiff e-mailed Patrick Wedig of IKEA complaining that IKEA had failed to uphold its end of the Settlement

---

[3] The Settlement Agreement here inadvertently includes the names of someone other than Hayes.  Dkt. 13 at 10, n. 7.

1    Agreement. *See id*. at 23.[4]  On August 11, 2010, counsel for IKEA
2    responded to Plaintiff's e-mail. *Id*.  IKEA noted that Plaintiff never
     revoked the Settlement Agreement and that Plaintiff never executed the
3    modifications to the Settlement Agreement IKEA had provided at Plaintiffs
     request. *Id*.  Thus, counsel for IKEA explained, the Settlement Agreement
4    signed by the parties on April 26, 2010 was binding on the parties, and
     IKEA had abided by all of its terms.
5         The e-mail reply from counsel for IKEA further
     responded to Plaintiffs concern about how IKEA had responded to ESD.
6    Counsel noted that the Settlement Agreement did not include anything
     promising that IKEA would refrain from disparaging Plaintiff or providing
7    information to ESD. *Id*.  The Settlement Agreement only required IKEA to
     provide Plaintiff with a neutral reference letter, which the company had
     done. *Id*.
8         On May 1, 2012, Plaintiff filed the Complaint that initiated this suit.
     *Id*. at 1. On  January 8, 2010, Plaintiff filed a Charge of Discrimination
9    against  IKEA  (the "January  2010 Charge").  The parties ultimately
     mediated the January 2010 Charge through the EEOC's voluntary
10   mediation program.  See Complaint (Dkt. 4) at 17-20. As a result, they
     entered the Settlement Agreement on April 26, 2010.  Complaint (Dkt. 4) at
11   5-10 (labeled by Plaintiff as the "original contract").

12   Dkt. 13 at 4-10.

13        In addition to the allegations above, in Hayes's response, he does not substantively

14   respond to IKEA's motion to dismiss, except to ask the Court not to grant it; rather, he

15   appears to allege that the Settlement Agreement is not valid due to an email

16   communication[5] he sent to IKEA counsel and objects to the consideration provided to his

17   former attorney, who represented him for some time period before and perhaps after the

18   mediation.  *See* Dkts. 4, 15 at 2 and 17.  It is unclear whether Hayes is arguing breach or

19

20        [4] Hayes did not attach a copy of his August 10, 2012 email to the complaint although he
21   provided the response he received from counsel for IKEA. Dkt. 13 at 10, n. 8.
          [5] IKEA does not dispute the authenticity of a portion of the email communication Hayes
22   submitted (Dkt. 15 at 5-6), which contains correspondence between Hayes and counsel for
     IKEA, David H. Black. Dkt. 16 at 3 n. 2.

1  invalidity of the Settlement Agreement based on his objection about the payment made to

2  his former attorney. In a later supplemental brief, Hayes alleges additional facts and

3  attaches a string of emails, which appear to be out of order, incomplete and of

4  questionable authenticity.  *See* Dkt. 17.

5  **III. DISCUSSION**

6  **A.     Standard for 12(b)(6) Motion to Dismiss**

7          Motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil

8  Procedure may be based on either the lack of a cognizable legal theory or the absence of

9  sufficient facts alleged under such a theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d

10  696, 699 (9th Cir. 1990).  A court accepts the factual allegations in the complaint as true

11  for purposes of deciding the motion to dismiss.  *Id.*  To survive a motion to dismiss, the

12  complaint does not require detailed factual allegations but must provide the grounds for

13  entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of

14  action.  *Bell v. Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Factual allegations

15  must be enough to raise a right to relief above the speculative level, on the assumption

16  that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555-56

17  (internal citations omitted). Plaintiffs must allege "enough facts to state a claim to relief

18  that is plausible on its face."  *Id.* at 570.

19  **B.     Application of Standard**

20          IKEA argues that Hayes's discrimination, harassment and retaliation claims

21  were released pursuant to his Settlement Agreement with IKEA, and that his claims for

22  breach of the Settlement Agreement fail, given its express terms.  Dkt. 13 at 13. In

ORDER - 9

1    IKEA's reply to Hayes's response, IKEA argues that Hayes fails to respond to the

2    substance of IKEA's motion to dismiss and does not show that he states any viable

3    claims; therefore, IKEA contends the Court should grant its motion.  Dkt. 16 at 2.  With

4    respect to the additional allegations in Hayes's supplement, IKEA contends that even if

5    the Court were to consider Hayes's supplemental allegations as amendments to his

6    complaint, Hayes's claims would fail because he still fails to plead any claims that are

7    actionable against IKEA. *Id*.

8        Hayes maintains he "sees no grounds for his case to be dismissed." Dkt. 15.  He

9    alleges that he was harassed, discriminated against, and retaliated against during his

10   employment with IKEA.  *See* Dkts. 4 and 15.  He claims IKEA breached the Settlement

11   Agreement by failing to provide him COBRA benefits and providing information to

12   ESD.  Dkt. 4.  Hayes argues the agreement is invalid due to an email communication he

13   had with IKEA's attorney, and he objects to IKEA's payment of consideration to Hayes's

14   former attorney.  Dkts. 15.  Hayes attempts to include other facts regarding the

15   Settlement Agreement in his supplement but those allegations are not entirely clear.  *See*

16   Dkt. 17.

17       Accepting Hayes's factual allegations as true, to the extent the Court understands

18   them, it finds the Settlement Agreement between Hayes and IKEA a binding and valid

19   contract for which it is undisputed that consideration was offered and accepted.  *Keystone*

20   *Land & Dev. Co. v. Xerox Corp.,* 152 Wn.2d 171, 177–78 (2004) (formation of a valid

21   contract necessitates that the parties manifest to each other their mutual assent to the

22   same bargain, which generally takes the form of an offer and an acceptance.) Though

1    Hayes objects to IKEA's payment to his former attorney, the Settlement Agreement

2    clearly states that such a payment is part of the consideration IKEA provided, and the

3    agreement specifies the amount ($4,036.67) to be provided to the attorney.  Dkt. 4 at 6.  It

4    is undisputed that IKEA met the obligation of making this payment in accordance with

5    the terms of the Settlement Agreement.  Additionally, Hayes does not contest the fact that

6    he received and accepted consideration from IKEA in the amount specified in the

7    Settlement agreement ($12,110.00).  *Id.*

8          The Settlement Agreement resolves Hayes's alleged discrimination, harassment

9    and retaliation issues that took place at IKEA, and it contains a general release of all

10   claims, including, but not limited to, claims under the Washington Law Against

11   Discrimination as well as Title VII of the Civil Rights Act of 1964, as amended. Dkt. 4 at

12   6.  Therefore, the Court finds no basis on which to grant Hayes relief for the alleged

13   discrimination, harassment or retaliation he resolved through settlement. Even if his

14   allegations against IKEA were slightly different than those claims which were settled, the

15   Court could grant Hayes no relief where the Settlement Agreement contains a waiver of

16   Hayes's right to pursue "any and all claims, known or unknown, asserted or unasserted,

17   which the Employee has or may have against Releasees as of the date of the execution of

18   this … agreement …." *See id.* at 6-7 (general release of any and all claims).

19         As to the COBRA benefits issue, the Settlement Agreement contains an

20   integration clause indicating that it "sets forth the entire agreement between the parties

21   hereto and fully supersedes prior agreements or understandings between the parties…."

22   *Id.* at 10.  Simply put, anything not incorporated into the agreement is not part of the

1   agreement.  The Court finds that no provisions of the Settlement Agreement require

2   IKEA to provide Hayes with COBRA benefits (Dkt. 4); IKEA has not breached the

3   contract by failing to provide COBRA benefits.  Nothing in the agreement prevents IKEA

4   from providing truthful statements to ESD (*see id.*); IKEA has not breached the contract

5   by providing a statement to ESD.  Finally, the additional allegations in Hayes's

6   responsive and supplemental filings fail to provide clear factual and legal bases which

7   would constitute a cognizable legal theory for rendering the contract invalid or for

8   finding breach.

9         Therefore, the Court finds that Hayes fails to a state viable cause of action for

10  which relief could be granted.

## IV. ORDER

12        It is hereby **ORDERED** that IKEA's motion to dismiss is **GRANTED**; the case is

13  **DISMISSED with prejudice;** and the Clerk of the Court is directed to close this matter.

14        Dated this 27th day of December, 2012.


_____
BENJAMIN H. SETTLE
United States District Judge